## HOWARD J. STOKES v. STATE.

No. A-10704. Jan. 14, 1948.
On Rehearing March 3, 1948.
(189 P. 2d 424; 190 P. 2d 838.)

22

Irvine E. Ungerman, of Tulsa, and T. Jack Tellegen, of Oklahoma City (Charles A. Whitebook, of Tulsa, of counsel), for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

BRETT, J. The defendant, Howard J. Stokes, was charged by information jointly with Russell Degen and George W. Jakeway with the crime of arson. Degen and Jakeway entered pleas of guilty and testified for the state. On the trial of Stokes, he was convicted of first degree arson and sentenced to 15 years in the penitentiary, from which conviction, judgment and sentence, he perfected this appeal.

The charging part of the information upon which the prosecution is based is in words and figures as follows to wit:

"* * * that Russell Degen, George W. Jakeway, Howard J. Stokes on the 3 day of January, A. D. 1945, in Tulsa County, State of Oklahoma, and within the jurisdiction of this court, did unlawfully, willfully, maliciously and feloniously, while acting in concert, each with the other, in the night time, set fire to and ignite and damage a certain building located at 14 South Lewis Avenue, in the City of Tulsa, Oklahoma, owned by Lottie May Winger, and being occupied by and in the possession of Harry Abdo, J. D. Summer, Wm. L. Neet and Roy Love, with the unlawful and felonious intent then and there upon the part of said defendants and each of them to destroy said building aforesaid, contrary to the form of the statutes in such cases made and provided, and against the peace and dignity of the state."

The statutes upon which the charge is grounded are as follows:

Title 21 O. S. A. § 1381, to wit:

"Arson is the wilful and malicious burning of a building, with intent to destroy it."

Title 21 O. S. A. § 1390, to wit:

"Arson is divided into two degrees. Arson in the first degree is: 1. * * *. 2. Maliciously burning in the night time a structure adjoining to or within the curtilage of an inhabited building in which there is at the time some human being, and in such a way that such inhabited building is endangered * * *. 3. * * *. 4. * * *. Arson committed in any other way is arson in the second degree."

Title 21 O. S. A. § 1391, to wit:

"Arson in the first degree is punishable by imprisonment in the penitentiary as follows: First. If committed

as designated in the first paragraph of the foregoing Section (§ 1390 this title), for a term of not less than One (1) year, nor more than Thirty (30) years; Second. If committed as designated in the second, third or fourth paragraph of said Section, not less than One (1) year, nor more than Fifteen (15) years."

Title 21 O. S. A. § 1392, to wit:

"Arson in the second degree is punishable by imprisonment in the penitentiary as follows: First. If committed in the night time, not less than One (1) year, nor more than Five (5) years; Second. If committed in the day time, not less than One (1) year, nor more than Five (5) years."

The defendant first contends that the foregoing information states no offense as defined by the statutes of Oklahoma. It is pertinent to note that he points out no reason for this assertion. He then concedes that if it states any offense at all it is the crime of arson in the second degree. As to the latter statement, we are of the opinion there can be no doubt. He further contends that the information is insufficient upon which to warrant the court in instructing the jury in instructions 4, 5, and 6 on the theory of first degree arson. Moreover, he says it is insufficient to support the verdict, judgment and sentence of 15 years.

In our opinion the information clearly charges the crime of arson in the second degree. It is not sufficient, however, to charge arson in the first degree. It is apparent from the record that the case was tried and the jury instructed on the theory that first degree arson as defined under Title 21 O. S. A. § 1390, subsection 2, had been alleged in the information. To have supported such a theory it would have been essential that in addition to the allegations therein contained, the information

charge that the building burned was "maliciously burned" and was "an inhabited building in which there" was "at the time some human being." No such allegations appear therein. It is true that the information alleges the described premises were owned by Lottie May Winger and occupied by and in the possession of **Harry Abdo,** J. D. Summer, Wm. L. Neet, and Roy Love. Such an allegation is not tantamount to alleging that said building was an inhabited building in which, at the time of the alleged burning, there was a human being, naming said person. To illustrate the importance of the said allegation, neither Abdo, Summer, Neet, nor Love were in the building when it burned, though they did occupy the same for business purposes in the operation of the Whittier Bar. On the other hand, the record discloses that Doctor Fred C. Switzer and a Mr. Hogan actually inhabited and were sleeping in the house adjoining the bar. To further emphasize the importance of such an allegation, the bar had been erected adjacent to said house and two walls of said house formed two of the inside walls of the said bar when it was burned. In order for the information to have charged arson in the first degree under the circumstances herein involved, certainly it should have alleged that at the time of the burning of said Whittier Bar, the adjoining building was then inhabited by Doctor Switzer and Mr. Hogan.

Under our Constitution and statutes, to allege first degree arson as defined in Title 21 O. S. A. § 1390, supra, facts must be pleaded bringing the crime within the definitions therein contained in at least one of the four subdivisions of said statute. As hereinbefore indicated it is apparent that in the case at bar the court tried the crime as being charged within the provisions of subsection (2) of Title 21 O. S. A. § 1390, supra. Under this

section, to try and convict the defendant on a charge of first degree arson. in addition to the other essential elements the information must contain the allegation that the building was maliciously burned and adjoined another that was at said time then inhabited by a human being. This requirement is not an unreasonable one but is in keeping with the Constitution and statutory provisions with reference to criminal pleading, as well as the provision of this court. construing such provisions.

Under the provisions of the Oklahoma Constitution, § 20 of the Bill of Rights: "* * * in all criminal prosecutions the accused * * * shall be informed of the nature and cause of the accusation against him * * *."

Under the provisions of Title 22 O. S. A. § 401, dealing with the form and requisites of indictments and informations, it is provided:

"The indictment or information must contain:

"1. The title of the action, specifying the name of the court to which the indictment or information is presented, and the names of the parties.

"2. A statement of the acts constituting the offense, in ordinary concise language, and in such manner as to enable a person of common understanding to know what is intended."

Under the provisions of Title 22 O. S. A. § 402, it is further provided as follows to wit:

"The indictment or information must be direct and certain as it regards:

"1. The party charged.

"2. The offense charged.

"3. The particular circumstances of the offense charged, when they are necessary to constitute a complete offense."

The foregoing section of the Bill of Rights has been construed in Oklahoma to mean exactly what it says. In Fletcher v. State, 2 Okla. Cr. 300, at page 315, 101 P. 599, at page 605, 23 L. R. A., N. S., 581, it is said:

"If an indictment or information does not state the nature and cause of the accusation against the defendant, it is void."

Further in that opinion, the court said, after referring to the provision in Wilson's Oklahoma Statutes which is the same as the provisions of Title 22 O. S. A. § 402, hereinbefore set forth, that the force of this statutory provision was inescapable, in the following language:

"Here is a mandatory provision of our statutes which forces this court to hold all indictments fatally defective which fail to give the particular circumstances of the offense charged, when they are necessary to constitute a complete offense. The language of the statute is that as to these matters the indictment must be direct and certain."

In Stout v. Territory, 2 Okla. Cr. 500, 103 P. 375, this court said:

"Where the statute [referring to a statute in] Wilson's Rev. & Ann. St. 1903, § 5358, [which is the same at Title 22 O. S. A. § 402,] creates and defines an offense, an indictment or information which does not allege all the essential elements constituting such offense is insufficient."

In Wilcox v. State, 13 Okla. Cr. 599, 166 P. 74, it was said:

"The information must contain a statement of the acts constituting the offense, and it is not sufficient to charge the offense in the words of the statute, when the particuar circumstances of the offense charged are necessary to constitute a complete offense."

See, also, Cole v. State, 15 Okla. Cr. 361, 177 P. 129; Jerome v. State, 28 Okla. Cr. 131, 229 P. 527, wherein the court said:

"The allegations in an information should be definite, direct and certain as to the offense intended to be charged."

To the same effect is George v. State, 28 Okla. Cr. 388, 231 P. 318. In Hart v. State, 59 Okla. Cr. 396, 60 P. 2d 411, the rule was applied by this court when it said:

"Information charging offense of tapping a pipe line, which failed to allege that pipe line alleged to have been tapped was laid or used for conduct or storage of crude oil and its derivatives, held insufficient."

In Ex parte Burnett, 78 Okla. Cr. 147, 145 P. 2d 441, in paragraph one of the syllabus, the rule was announced as follows:

"The true test of the sufficiency of an information is not whether it might possibly have been made more certain, but whether it alleges every element of the offense intended to be charged and sufficiently apprises the defendant of what he must be prepared to meet."

In the body of that opinion, at page 150 of 78 Okla. Cr., at page 442 of 145 P. 2d this court said:

"It is fundamental that the information must state the acts constituting the offense in such a manner as to enable a person of common understanding to know what is intended."

In face of the foregoing statutory definitions of arson in the first and second degrees and § 20 of the Bill of Rights, the statutory requirements of an information and the judicial interpretations covering the subject, it clearly appears that the information herein is insufficient to charge arson in the first degree. It lacks two

essential elements to make out such a charge: First, that the burning was maliciously done; and, second, that said building adjoining the Whittier Bar was inhabited by human beings, namely Doctor Switzer and Mr. Hogan. However, it does clearly allege arson in the second degree.

Counsel for the state has written an exhaustive and masterful brief in support of its contentions. He is deserving of the highest commendation for his endeavor, but we are unable to follow his views. In substance, his contentions are, "that an information which charges arson as defined by statute and which does not by its specific allegations eliminate the elements of arson in the first degree, a defendant may be convicted of arson in the first degree in case of the proof establishes the commission of the offense." Under the rules of pleading long recognized in Oklahoma, this is an interesting but novel contention. The requirements of our practice in pleadings are based not upon the theory of not eliminating the essential elements of an offense, but upon the specific requirement of the inclusion of all the essential elements of the crime as defined by statute. Moreover, the information in the case at bar, we believe, by its specific allegations, even under the theory of the state, eliminates the essential elements of arson in the first degree. If the allegations of the information do not include the essential elements of arson in the first degree, to wit, that the building burned was maliciously burned and then inhabited by a human being, what more could be said than that it eliminates this requirement of the statute? The state further contends that to plead the commission of arson in general terms is sufficient; that the degree thereof is a matter to be determined by the jury from the evidence and the instructions of the

court. The state cites in support of its theory the California and Montana statutes which alone of all the states were identical with ours, until California changed hers in 1929. The state likewise cites California cases in support of its contention. The Montana statutes have not been construed. The California cases relied upon by the state are as follows, to wit: People v. Giacamella, 71 Cal. 48, 12 P. 302; People v. Russell, 81 Cal. 616, 23 P. 418; People v. Morhar, 78 Cal. App. 380, 248 P. 975; People v. Brahm, 98 Cal. App. 733, 277 P. 896; People v. Egan, 77 Cal. App. 279, 246 P. 337, 339; People v. Barnhart, 59 Cal. 381, 20 P. 381. The latter case involves the charge of burglary. The California cases would be most persuasive on this point were it not for the fact that there is a vast difference between the rules of pleading in California and Oklahoma. California follows the more liberal rule of construction while this court follows a stricter construction in relation to pleading. Since our court is so committed, as revealed by the authorities hereinbefore cited and quoted from, we are bound to follow this construction. This we do not do with the slightest degree of reluctance for we are certainly in accord with the form of pleading adopted in the State of Oklahoma. Even in California, however, there is respectable dissenting authority that believes such a procedure should be followed in that state. See People v. Britton, 6 Cal. 2d 1, 56 P. 2d 494, 496, wherein in a dissenting opinion Justice Curtis said:

"One of the most ancient and fundamental rules of criminal procedure is that a defendant must be informed of the precise charge against him before he can be placed on trial or punished therefor."

The California cases relied on by the state to support its contention might have application here were it

not for our Bill of Rights and the mandatory provisions of our statutes in relation to the form of indictments and informations. Both our statutes and the Constitution, as well as the interpretations of this court, bind us to the more specific form of pleading. To follow the California cases cited in support of the state's contentions would require us to abandon the provisions of section 20 of the Bill of Rights and the mandatory enactments of the Legislature, as well as the long line of decisions with which we are in accord. Moreover, the cases cited from California turn upon an application of the liberal rules of pleading and the theory that, "The degree of the offense is a question for the jury to determine from the evidence and need not be stated," and, "indeed any designation is surplusage." 14 Cal. Juris. 54, § 40; People v. Russell, supra; People v. Nichol, 34 Cal. 211 (murder); People v. King, 27 Cal. 507, 87 Am. Dec. 95 (murder); People v. Dolan, 9 Cal. 576 (murder); People v. Lloyd, 9 Cal. 54. Such is not the rule and never has been the rule in Oklahoma in relation to pleading. The rule in Oklahoma is, and has been, that though the crime may be described in the general language of the act, the description must be accompanied by a statement of all the particulars essential to constitute the offense or crime. Under this form of pleading this court has repeatedly held the accused is entitled to know, not only the offense with which he is charged, but the degree thereof, if there are different degrees of the offense. The case at bar must stand or fall on the allegations contained in the information. The law as construed in Oklahoma will not permit a man to be convicted on a charge not broad enough to include a greater offense. Of course, however, he can be charged with a greater offense and convicted of a lesser or included offense. Title 22 O. S. A. § 916. The rule of included offenses is of no avail to

the state in this case. It works inversely, the greater including the lesser; not progressively, the lesser including the greater. Here the defendant is charged with second degree arson. He can be convicted of that charge only.

Based upon the information charging second degree arson, the court, the defendant complains, instructed the jury on the theory that it alleged first degree arson. The first instruction complained of is instruction No. 4, as follows, to wit:

"Arson in the first degree is: Maliciously burning in the night time an inhabited building in which there is at the time some human being.

"Arson in the first degree is punishable by imprisonment in the penitentiary, if committed as designated in the preceding paragraph, for a term of not less than one year nor more than thirty years."

The defendant contends there is no evidence upon which to base the foregoing instruction. With this statement we cannot agree. The evidence is ample to support the instruction, but the instruction is erroneous because the information charges only second degree arson and will not therefore support the instruction on first degree arson. This being the case, the jury should have been instructed only on second degree arson. Instruction No. 5, next complained of reads as follows:

"You are instructed that if you find from the evidence that * * * the defendant did * * * commit the crime of arson, as charged in the information in this case and as defined in these instructions, then it will be your duty to convict the defendant and fix his punishment by imprisonment in the penitentiary for a term of not less than one year nor more than thirty years."

Under the information alleging second degree arson, this instruction, prescribing a penalty for first degree

arson, is likewise clearly erroneous. Instruction No. 6, next complained of, reads as follows:

"You are instructed that in the event you find the defendant guilty as charged in the information, it shall be your duty to assess the punishment in accordance with the instructions previously given herein."

This instruction is clearly erroneous, when viewed in light of instructions 4 and 5, which instructed the jury to fix the punishment between one and thirty years. Certainly, the information charging only second degree arson would not support such an instruction. Such cannot be done in Oklahoma. Martin v. State, 48 Okla. Cr. 102, 289 P. 787, wherein this court held that where:

"The information * * * charges arson in the second degree, but the court's instructions and the trial of the case was on the theory that the charge was arson in the first degree; such was error."

Further, in that opinion, this court said:

"It is fundamental that the trial court should submit to the jury the charge laid in the information, defining the offense sufficiently to inform the jury what facts are necessary to establish in order to justify a verdict of guilty and, failure to do so, in event of conviction, is ground for reversal."

In the body of the opinion, in support of the court's duty to instruct as to the law, measured by the allegations of the information, this court cited the following cases: Brook v. State, 6 Okla. Cr. 23, 115 P. 1026; Wilkerson v. State, 37 Okla. Cr. 43, 256 P. 63; Smith v. State, 40 Okla. Cr. 152, 267 P. 682; Russell v. State, 9 Okla. Cr. 692, 133 P. 475; Clemons v. State, 8 Okla. Cr. 452, 128 P. 739. Men may differ as to the construction placed on the information involved in the Martin case, supra. We are not called upon to pass upon that ques-

tion. That was adjudicated by this court in that case. We are only required, in the case at bar, to approve the rule of law as announced in the Martin case as to instructions, and determine its applicability to the case at bar. With the principles therein announced as to instructions, we are heartily in accord. In Shepherd v. State, 51 Okla. Cr. 209, 300 P. 421, 422, this court said:

"The instructions of the court should conform to the charge in the information and the defense interposed and to the testimony in the case."

The foregoing instructions are not only erroneous in that they instructed on the theory that the information charged first degree arson, but also for the reason that under the provisions of arson in the first degree, Title 21 O. S. A. § 1390, subsection (2), supra, the maximum penalty therefor is 15 years instead of 30 years. Even though the information was sufficient to charge first degree arson, under this section, the court's instructions would be erroneous for the reason that it cannot substitute a greater penalty than that provided by law. When measured by both the information and the applicable statutes, instruction No. 6 was clearly erroneous. When measured by the charge contained in the information, second degree arson, the maximum penalty for which the defendant could be sentenced is five years. The instructions, as a matter of law, should have been within the limitations prescribed by the statutes. Such was not the case herein.

Next, the defendant contends that the court committed error in not sustaining his demurrer to the state's evidence and his motion for a directed verdict. This contention is first predicated upon the proposition that there is a fatal variance in the allegations of the information and the proof to the effect that the defendant was charged in the information with burning a building located at

14 South Lewis, when the proof showed the building to be located at 16 South Lewis. This contention would have great merit were it not for the fact that the building is further described as being "Owned by Lottie May Winger and being occupied by Harry Abdo" et al. The place owned by Lottie May Winger and occupied by Harry Abdo was well-known to the defendant. Abdo was the defendant's competitor, operating the Whittier Bar in the building burned. The defendant knew to what place reference was made when it was described as occupied by Harry Abdo, even though inaccurately described in the information as 14 South Lewis instead 16 South Lewis. Moreover, the defendant in his signed confession described the Whittier Bar, operated by Harry Abdo, and said it was located at 14 South Lewis. Furthermore, he knew that the place described as occupied by Harry Abdo et al. was the same place he had hired Buddy Rogers to burn, which he did, prior to the occasion herein involved, setting the roof thereof on fire in an attempt to burn Abdo's Whittier Bar. So far as the information herein involved is concerned, there is but one building answering the description occupied by Harry Abdo et al.—that was the one located at 16 South Lewis, immediately adjacent to what was described as No. 14 South Lewis. Though inaccurately described as located at No. 14 in the defendant's confession, there can be no doubt that he knew the place to which reference was made and that it was actually No. 16 South Lewis, the place owned by Lottie May Winger and occupied by Harry Abdo et al. as the Whittier Bar. The defendant, under these circumstances, could not have been misled as to what building he was charged to have been guilty of burning. He could not have been prejudiced by this variance, which at most was technical. It was not such a variance as would tend to prejudice him, since under the description of the building as to its own-

ership and occupancy he could not have been prejudiced by the discrepancy in the proof as to the house number since the allegation as to ownership and occupancy was clear and conclusive as to what building was intended in the information. Wright v. Commonwealth, 155 Ky. 750, 160 S. W. 476, 477, is a case in point, supporting this conclusion wherein the court said:

"Appellant could not have been misled by the words 'warehouse and tobacco house,' for the same were qualified by the further description, 'belonging to G. R. Allen and W. A. Usher, and occupied by B. W. Wright, who was doing business for B. W. Wright and V. E. Allen.' Appellant knew without doubt what building he was charged with burning."

There was not a total or fatal failure of proof such as was involved in Cheeves v. State, 5 Okla. Cr. 361, 114 P. 1125; Henderson v. State, 18 Okla. Cr. 611, 197 P. 720; Yoather v. State, 5 Okla. Cr. 46, 113 P. 234, cited by the defendant in support of his contention. In the last-cited cases the defendants were misled by the pleadings and the proof was totally lacking to sustain the charge alleged, thus, the variance was fatal. No such situation confronts us in the case at bar. The variance herein certainly was not one of substance prejudicial to the defendant. Neither was it such a variance as to leave the defendant uninformed. The information gave him such facts as to inform him without doubt as to what building he was charged with having burned, notwithstanding the discrepancy of description. This contention of the defendant is therefore without merit. We are supported in this conclusion by the provisions of Title 22 O. S. A. § 421, reading as follows:

"An omission to designate, or error in designating in indictment for arson, the owner or occupant of a building, shall not prejudice the proceedings thereupon, if it

38

appears that upon the whole description given of the building, it is sufficiently identified to enable the prisoner to prepare his defense."

There is no question about the information being sufficient to enable the defendant to prepare his defense.

The fourth contention of the defendant is based primarily upon the proposition that the verdict should have designated the degrees of crime of which the defendant was found guilty. This contention is grounded upon the provisions of Title 22 O. S. A. § 915, which reads as follows, to wit:

"Whenever a crime is distinguished into degrees, the jury, if they convict the defendant, must find the degree of the crime of which he is guilty."

The verdict was in words and figures as follows, to wit:

"We, the jury, drawn, impaneled, and sworn in the above entitled cause, do upon our oaths find the defendant Howard J. Stokes guilty of the crime of Arson, as charged in the information herein and fix his punishment at confinement in the State Penitentiary at McAlester, Oklahoma, for a term of fifteen years (15). (sgd.) E. L. Mendenhall, Foreman."

The defendant contends in substance that the jury should have found the degree of the defendant's guilt, that if they had found the defendant guilty as charged in the information, they would have found him guilty of second degree arson, that instead the jury found him guilty as charged in the information and fixed his punishment at 15 years and based upon this verdict the court imposed the sentence of 15 years; that if the jury had actually found the defendant guilty as charged in the information the verdict would have been guilty of arson in the second degree and the maximum sentence that could

have been imposed would have been 5 years. With this contention we are in accord. Unfortunately, from the standpoint of the defendant, the provisions of Title 22 O. S. A. § 915, supra, have not been given the limited construction contended for by the defendant but the same has been construed in light of other statutes having a bearing on this question. Morgan v. State, 8 Okla. Cr. 444, 128 P. 159; Inklebarger v. State, 8 Okla. Cr. 316, 127 P. 707; Munson v. State, 13 Okla. Cr. 569, 165 P. 1162; Hardeman v. State, 15 Okla. Cr. 229, 175 P. 948; Smith v. Territory, 14 Okla. 162, 77 P. 187; and, Bowlegs v. State, 9 Okla. Cr. 69, 130 P. 824, 825, wherein the jury found the defendant guilty as charged in the indictment. The court said, in relation to Title 22 O. S. A. § 915, supra:

"The verdict was received, read, and recorded without objection on the part of the defendant."

Here, the verdict was received, read and recorded as in the Bowlegs case, without objection. Furthermore, no objection was raised as to the verdict until the case came here on appeal. Further in the Bowlegs case, supra, this court said:

"This provision of Procedure Criminal must be interpreted in connection with other provisions which have a bearing on the question as will be seen by reference to the same."

Further on in the opinion the court quoted with approval from Hunn v. Commonwealth, 143 Ky. 143, 136 S. W. 144, a Kentucky case wherein the court held:

"Failure of a verdict to name the offense of which the jury found defendant guilty does not invalidate it if from its language as a whole no doubt can arise as to the offense of which he was convicted."

40

Then, as to a similar contention to that made by the defendant in the case at bar, as to the Bowlegs case, supra, this court said:

"We think the defect is not sufficient to affect the substantial rights of the defendant. He was present, his counsel was there, and this verdict was received and read in his hearing, and no objection was made. It is our opinion that the error is not one which will justify a reversal of the judgment."

Moreover, in Re Knight, 75 Okla. Cr. 316, 131 P. 2d 506, 508, this court said in part:

"While it is undisputed that the verdict of the jury finding the defendant guilty of robbery and fixing his punishment at forty years imprisonment, and the judgment of the court as rendered in accordance therewith are technically informal in that, the jury failed to find the degree of the crime of which he is guilty (sec. 3096, St. 1931, 22 O. S. 1941 § 915) while the statute requires the degree to be found by the jury, however, it has been repeatedly held by this court that 'where a verdict is irregular in form, but is not objected to at the time it is returned, and the court given an opportunity to have the jury correct it, every intendment and inference will be indulged to uphold it, and where from an examination of the verdict, and the entire record, the intent and purpose of the jury as expressed in the verdict may be clearly ascertained, it will be upheld.'"

The court instructed the jury as to first degree arson but advised them that if they should find the defendant committed "the crime of arson as charged in the information in this case and as defined in these instructions, then it will be your duty to convict the defendant and fix his punishment by imprisonment in the penitentiary for a term for not less than one year nor more than thirty years."

Thus, in its final analysis the case resolves itself into one of erroneous instructions based upon an erroneous conception on the part of the trial court that the information charged arson in the first degree. Had the instructions been limited to second degree arson in conformity with the information and the sentence been in accordance therewith, the defendant would be left without a single contention of merit. That the jury found the defendant guilty of the crime of arson, as defined in Title 21 O. S. A. § 1381, supra, is conclusive. Therefore, in the last analysis the turning point in the case is to be found in the instructions and excessiveness of punishment.

There is not the slightest doubt as to the defendant's guilt. The facts are clear and conclusive that the defendant operated the Circle Bar. He sought to eliminate his competitors Abdo et al., who operated the Whittier Bar. His signed confession and other evidence conclusively shows that on a prior occasion to the one herein involved he paid Buddy Rogers to pour gasoline on the roof of the Whittier Bar in an attempt to burn down Abdo's place. That thereafter he made an agreement with Russell Degen and Jimmy Knight to burn the Whittier Bar and paid them in advance twenty-five dollars ($25) each. That instead of burning the place they went to the bar, broke off the spigots and smashed in the Nickelodian. That he told them he wanted a completed job and would pay them $100 each. (Knight apparently got cold feet and left town and had no further connection with the case.) Thereafter, Russell Degen brought George Jakeway to the defendant and another deal was made to burn the Whittier Bar. Thereafter, he helped them carry the gasoline to burn it. Degen and Jakeway broke into the Whittier Bar in the nighttime, early in the morning on January 23, 1945, poured gasoline in and about the bar and set fire to it.

They were seen running from the place by Mr. W. R. Chilton. They admitted their complicity and testified fully for the state. They were substantially corroborated by the defendant's confession and other evidence. The fire imperiled the lives of Doctor Switzer and Mr. Hogan, who lived in the adjoining house to which the bar had been built, as hereinbefore described. Doctor Switzer's dog perished in the fire. It was a vicious crime, deliberately planned and executed. The evidence of the defendant's guilt is clear and conclusive. The evidence is sufficient to support a conviction for arson in the first degree; however, the information charges arson in the second degree, and the court instructed on arson in the first degree. It is unfortunate that the information does not charge arson in the first degree. Had the court instructed the jury on arson in the second degree, as charged in the information, the jury would undoubtedly have returned a verdict of guilty of arson in the second degree and assessed the penalty therefor. So, as hereinbefore indicated, the error is the result of faulty instructions. Under the provisions of Title 22 O. S. A. § 1068:

"No judgment shall be set aside or new trial granted by any appellate court of this State in any case, civil or criminal, on the ground of misdirection of the jury * * * unless, in the opinion of the court to which application is made, after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right."

This section of the statute has been construed many times. In Baker v. State, 22 Okla. Cr. 224, at page 229, 210 P. 292, at page 294, this court said:

"This court would not be authorized to reverse a conviction on the ground that the trial court erred in its instructions to the jury, unless from an inspection of the

entire record it appears that the defendant was injured thereby, and to determine the issue the court must consider the question as to whether the defendant is guilty or innocent of the offense charged. Fowler v. State, 8 Okla. Cr. 130, 126 P. 831; Fulkerson v. State [17 Okla. Cr. 103], 189 P. 1092 [Holmes v. State, 18 Okla. Cr. 415, 195 P. 508]."

In Quick v. State, 51 Okla. Cr. 121, 299 P. 242, 243, this court said:

"This court has said, in substance, that the giving of erroneous instructions is not always ground for reversal. Thompson v. State, 6 Okla. Cr. [50], 51, 117 P. 216; Gransden v. State, 12 Okla. Cr. 417, 158 P. 157; West v. State, 13 Okla. Cr. 312, 164 P. 327, L. R. A. 1917E, 1129; Cloud v. State, 41 Okla. Cr. 395, 273 P. 1012."

Had the verdict in this case been one for second degree arson and the penalty not to exceed five years, as hereinfore said, the defendant would not have had the slightest grounds of complaint. Under the provisions of Title 22 O. S. A. § 1066, "the appellate court may reverse, affirm or modify the judgment appealed from * * *." In Bright v. State, 76 Okla. Cr. 67, at page 76, 134 P. 2d 150, at page 154, this court said:

"It is not often that this court will modify a judgment and sentence, and it is only when the ends of justice demand that it will be done."

In Ex parte Williams, 63 Okla. Cr. 395, 75 P. 2d 904, 908, this court said:

"Under Procedure Criminal, Section 3204, 22 Okla. St. Ann. § 1066, this court, exercising its revisory jurisdiction, has the power and authority to modify any judgment appealed from by reducing the sentence. Williams v. State, 10 Okla. Cr. 336, 136 P. 599."

See, also, Tah Do Quah v. State, 62 Okla. Cr. 139, 70 P. 2d 818, wherein the court said:

"This court, exercising its revisory jurisdiction, has the power to modify, within the limits of the statutes, any judgment and sentence appealed from, in the furtherance of justice."

See Murphy v. State, 72 Okla. Cr. 1, 112 P. 438, to the same effect; Griffin v. State, 84 Okla. Cr. 207, 180 P. 2d 844; Thomas v. State, 69 Okla. Cr. 188, 101 P. 2d 283. In Sleeper v. State, 71 Okla. Cr. 136, 109 P. 2d 520, 524, this court said:

"Under the decisions of this court from the earliest days of its existence it has uniformly been held that instructions are to be examined in the light of the whole record. In construing Oklahoma Statutes 1931, section 3206, 22 Okla. St. Ann. § 1068, it has been uniformly held that a case will not be reversed by reason of an error in an instruction unless the error was such that had 'probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right,' and that if, after an examination of the entire record, the guilt of the defendant was established to the extent that a retrial of the case would not change the result, that the case would not be reversed. Thompson v. State, 6 Okla. Cr. 50, 117 P. 216; Hooper v. State, 7 Okla. Cr. 43, 121 P. 1087; West v. State, 13 Okla. Cr. 312, 164 P. 327, L. R. A. 1917E, 1129; Montgomery v. State, 19 Okla. Cr. 224, 199 P. 222; Holmes v. State, 18 Okla. Cr. 415, 195 P. 508; Quick v. State, 51 Okla. Cr. 121, 299 P. 242; Exline v. State, 48 Okla. Cr. 135, 289 P. 783; Cole v. State, 18 Okla. Cr. 430, 195 P. 901; Cowley v. State, 65 Okla. Cr. 479, 88 P. 2d 914; Williams v. State, 62 Okla. Cr. 394, 71 P. 2d 781; Janeway v. State, 62 Okla. Cr. 264, 71 P. 2d 130."

A retrial of the case at bar would not change the result as to guilt of the defendant. In the event of a retrial, under proper instructions, the jury would find the de-

fendant guilty as charged in the information, of second degree arson and fix his penalty, at not less than five years in the penitentiary. We base this conclusion upon the fact that even on the theory of first degree arson the jury could have assessed the minimum of one year, but did not. Instead, it fixed a penalty of 15 years. There is not the slightest reason to believe that on the theory of second degree arson another jury would fix the penalty at less than the maximum of five years. In view of these conclusions and the overwhelming evidence of guilt of the defendant, the judgment and sentence will be accordingly modified to five years in the penitentiary and, as modified, affirmed.

BAREFOOT, P. J., and JONES, J., concur.

On Petition for Rehearing.

Judgment modified by reducing sentence from term of five years in the State Penitentiary to a term of two years in the State Penitentiary and, as so modified, affirmed.

Irvine E. Ungerman and Joe Chambers, both of Tulsa (Charles A. Whitebook, of Tulsa, of counsel), for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

BRETT, J. It was urged by the defendant, Howard J. Stokes, on rehearing, that this court was without jurisdiction to modify and affirm the judgment and sentence of the lower court on the record as herein made. It was further contended that the modification amounted to a different sentence by this court and constituted a denial of due process in that the defendant was denied a new trial by jury. He further contended that since the in-

formation charged second degree arson and that the case was tried for first degree arson and the jury so instructed, that this court, under the authority of Martin v. State, 48 Okla. Cr. 102, 289 P. 787, could only reverse the cause for a new trial and was without power to modify the judgment and sentence. Finally, it was contended that there was no precedent to support the action of this court.

These contentions are without merit and there is ample authority to support this action of the court. A case that is squarely in point with the procedure pursued in the court's original opinion is Cunningham v. State, 55 Okla. Cr. 67, 24 P. 2d 1013, 1015, wherein the defendant was charged with rape in the second degree, but he was tried as though charged with rape in the first degree and the jury was so instructed. Upon conviction the defendant was sentenced to serve 15 years in the State Penitentiary. Therein, this court said:

"This court, under the power to modify judgments, section 3204, Okla. St. 1931 [22 O. S. 1941 § 1066], may reduce the judgment to the included offense of rape in the second degree and fix appropriate punishment. Lebo v. State, 40 Okla. Cr. 116, 267 P. 288; Plaster v. State, 45 Okla. Cr. 452, 283 P. 805; Brasel v. State [48 Okla. Cr. 403] 291 P. 807.

"The judgment is therefore modified from rape in the first degree to rape in the second degree, the punishment fixed at four years in the penitentiary, and, as modified, the case is affirmed."

In this same connection, see Randall v. State, 33 Okla. Cr. 262, 243 P. 983, Mayberry v. State, 44 Okla. Cr. 134, 279 P. 934, and the rather recent case of Kilpatrick v. State, 75 Okla. Cr. 28, 128 P. 2d 246, wherein the court modified the conviction from first degree rape and punishment at 15 years, to assault with intent to commit rape and punishment at two years. The foregoing au-

thorities constitute ample support of the court's action in this matter, in addition to the provisions of Title 22 O. S. A. § 1066, 22 O. S. 1941 § 1066.

Moreover, as was said by Justice Harlan in Motes v. United States, 178 U. S. 458, 20 S. Ct. 993, 1000, 44 L. Ed. 1150:

"It would be trifling with the administration of the criminal law to award him a new trial because of a particular error committed by the trial court, when in effect he has stated under oath that he was guilty of the charge preferred against him."

A similar situation confronts us in the case at bar. The defendant's signed confession, and other evidence, in effect, amounts to an admission of his guilt as to the charges preferred against him.

There is, however, a matter presented in the petition for rehearing which has impressed us with its merits. That is, the contention of this defendant that this court modified the punishment imposed against the defendant to the maximum sentence which could have been meted out to him if a jury had been corrrectly instructed as to the law applicable to this case. After considering this argument of the defendant, we have come to the conclusion that in view of the fact that we are not remanding this case for another trial that it would probably be an unwarranted assumption that a jury of twelve men would give him the maximum punishment. Moreover, in consideration of the fact that the defendant has never before been involved in any trouble and upon being informed that nothing has been done to bring Russell Degen and George W. Jakeway, the perpetrators of this crime, to trial and justice for approximately two years, we feel that the ends of justice warrant a further modification of the judgment and sentence.

It is therefore hereby ordered that the judgment and sentence imposed herein against Howard J. Stokes be modified to a term of two years in the penitentiary and the judgment and sentence as so modified is affirmed.

BAREFOOT, P. J., and JONES, J., concur.