Haynes H. WHISENHUNT, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–12077.

Criminal Court of Appeals of Oklahoma.

Dec. 22, 1954.

Rehearing Denied Jan. 26, 1955.

inflicting serious bodily injury, all of which things the defendant did with the intent to kill. The defendant was tried by a jury and convicted; the jury was unable to agree on the punishment, left the same to the trial court, which fixed the penalty at 2 years in the penitentiary. Judgment and sentence was entered accordingly, from which this appeal has been perfected.

■ The defendant contends the evidence is not sufficient to support the verdict, and that the trial court erred in not sustaining his motion for a directed verdict. This contention is without merit. The evidence discloses possibly without foundation the defendant suspected his wife and V. W. Brewer of unlawful intimacies and by reason thereof made the aforesaid alleged assault with intent to kill. In support of the information evidence was offered to the effect that the assault was made by the defendant shooting through the glass door of Brewer's cafe (known as the Cattlemen's Cafe) at Mr. Brewer and the defendant's wife. Six shots were fired in all, 2 from the front door towards the back and into the kitchen whereupon Mr. Brewer retreated to the kitchen where the defendant's wife was when fired upon. Thereafter the defendant went to the back door and broke in and fired one shot from the kitchen through the front of the cafe at Brewer and his wife. The intended victims then ran out of the front door with the defendant following and shooting two other shots across the street in the direction of Brewer. About a week before the shooting occurred the defendant came to Brewer's cafe and tried to get his wife to leave her employment, cursed his wife and Mrs. Brewer, whereupon Brewer proceeded to give the defendant a whipping, knocking him down several times.

The defense herein was predicated solely on the proposition of temporary insanity growing out of what the defendant alleged and sought to prove were criminal relations between Brewer and the defendant's wife. In this connection it is well that we note that the record does not support any direct or positive proof of any

Gossett & Gossett, Durant, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Owen J. Watts, Asst. Atty. Gen., for defendant in error.

BRETT, Judge.

Plaintiff in error, Haynes H. Whisenhunt, defendant below, was charged by information in the district court of Bryan county, Oklahoma, with the crime of assault with intent to kill, Title 21, § 652, O.S.A.1951. In said information it was alleged in substance that on April 12, 1953 in said county and state, the defendant assaulted one V. W. Brewer with a .38 pistol by firing the same at Brewer, one bullet taking effect in his neck and shoulder

criminal acts between the said parties but consists of hearsay testified to by the defendant as to what he had been informed about the actions of the defendant's wife and Mr. Brewer and not upon anything the defendant saw or heard himself. The defendant's testimony in this regard was sustained by little if any corroboration.

In connection with the foregoing the record discloses the fact that the shooting occurred after the defendant's wife had divorced him for non-support of her and her children. It appears the defendant used all kinds of persuasion to forestall the divorce. In this regard even this record shows that the defendant had a very poor work record. Moreover it discloses the defendant was a beer drinker and had been convicted of operating a motor vehicle while under the influence of intoxicating liquor. The evidence herein is entirely sufficient to support the information, the conviction and judgment and sentence.

 The defendant contends he was not accorded a fair and impartial trial because the trial judge refused to permit the defendant to testify concerning the details of what his son and one Morris Davis had told him about what they had observed between Brewer and the defendant's wife. The defendant cites no authority in support of this contention. Nevertheless this point has been passed on in Steeley v. State, 17 Okl.Cr. 252, 187 P. 821, wherein this court held:

"Where there is evidence tending to show defendant's insanity just prior to and at the time of the commission of the homicide, it is competent for defendant to testify concerning statements and admissions made to him by deceased relative to deceased's immoral conduct with the wife of the defendant, and also of defendant's personal knowledge of such immoral conduct, as tending to show actuating causes of defendant's alleged insanity. It is also competent and admissible as tending to show provocation."

In Choate v. Commonwealth, 176 Ky. 427, 195 S.W. 1080, 1086, involving the crime of maiming when he had been guilty of criminal intimacies with Choate's wife the Kentucky court said:

"In cases where the defendant seeks an acquittal upon the sole ground of unsoundness of mind caused by information received by him before the act that his wife had been criminally intimate with the person he was charged with killing, it is admissible to permit him to relate information of every fact and circumstance conveyed to him shortly before the act, or of which he had personal knowledge, tending to show the illicit relations of his wife with the person he killed, for the purpose of illustrating his state of mind at the time the killing occurred. McCandless v. Commonwealth, 170 Ky. 301, 185 S.W. 1100; Shepherd v. Commonwealth, 119 Ky. 931, 85 S.W. 191, 27 Ky.Law Rep. 376. If the defendant received such information and believed it to be true, it is wholly immaterial, so far as its effect upon him is concerned, whether it was, in fact, true or false. And so in this case it was not the truth or falsity of the information Choate received before the act that upset his mind, but the fact that he believed it to be true, and that it was of such a nature as to naturally and reasonably disturb his mental equilibrium.

"This character of evidence is, of course, hearsay and, generally speaking and in ordinary cases, would be entirely incompetent. But when the defense is insanity, or such an irresistible, insane impulse as would in law excuse the act, the defendant ought in reason to be allowed to show how and why his mind was affected and the causes that produced the condition. And so it is generally held that evidence of information conveyed to the defendant by others, or obtained through his personal observation shortly before the act, is admissible if it is of such a nature as to naturally and reasonably affect his mental poise to an extent that it would render him irresponsible while acting under its influence."

370

Hence we are of the opinion that the defendant should have been permitted to detail every fact and circumstance for the purpose of showing how and why his mind was affected. However, it is apparent, from this record, that the defendant never received any other information as a condition for his disturbed state of mind other than such as show acts of indiscretion upon which a highly suspicious and imaginative mind could build figments of fiction. The record further discloses the court did permit the defendant to relate not the details but the character of the general information which he received from his father, his son, Morris and others. This information (all hearsay) consists largely of testimony to the effect he had been informed that Brewer came by his house for his wife and took her to work (in this connection they opened up the cafe about five o'clock, to get ready for breakfast at 6:30); that Brewer brought her home after work sometimes later than usual, and once took her to Texas to visit her parents. He testified that he had been informed that Brewer bought her some dresses (in this connection Mrs. Brewer testified she bought the defendant's wife one dress). The defendant further testified that Brewer took defendant's wife out to the scene of a wreck on the Colbert road after work one afternoon, and further Brewer and defendant's wife had attended a party one time together where there was some drinking. He also testified he had been informed that on another occasion his wife took her son and another child to a preview picture show and left them, stating she was going to walk around, and that his son related to him that Brewer and his wife had gone to drive-ins together several times. There was no attempt at corroboration of the testimony as to these incidents offered either through the defendant's son or the defendant's friend Morris. We are of the opinion that while it would have been proper to permit the defendant to detail extensively the matters which he said disturbed his state of mind, this record discloses the defendant was permitted to testify to the substance of the things he had been told, hence

he was not deprived of any substantial right. Particularly, the foregoing is true, in view of the fact that the information of the matters on which he had been informed rose no higher than alleged indiscretions without proof of acts of infidelity. The allusions to the infidelity of Mrs. Whisenhunt largely appears in the questions propounded by counsel and not in relation of factual acts of infidelity. We are therefore of the opinion that while the court's refusal to permit enlarged detailing of the matters and things of which the defendant had been informed constituted error in the case at bar it is not reversible error. Title 22, § 1068, O.S.A.1951.

The defendant next contends that the giving of instructions 13, 14, 15 and 16 on self defense constituted error. In this assertion we are in accord for the record no where discloses a plea of self defense was interposed. Instructions in all cases should be applicable to the facts and all proper deductions and interpretations of them and not to questions not presented or covered by the evidence. Finley v. State, 84 Okl.Cr. 309, 181 P.2d 849; Mead v. State, 65 Okl.Cr. 86, 83 P.2d 404; Oglesby v. State, 56 Okl.Cr. 286, 38 P.2d 32; Stokes v. State, 86 Okl.Cr. 21, 189 P.2d 424, rehearing 190 P.2d 838, quoting from Shepherd v. State, 51 Okl.Cr. 209, 300 P. 421, 422, wherein it was said:

"The instructions of the court should conform to the charge in the information and the defense interposed and to the testimony in the case."

Smith v. State, 90 Okl.Cr. 98, 210 P.2d 675; Adams v. State, 93 Okl.Cr. 333, 228 P.2d 195. Insofar as the evidence herein is concerned the defendant made no issue of self defense. It was therefore error to instruct the jury on self defense. Nevertheless we do not see how the giving of said instructions could constitute reversible error since the instructions in no way prejudiced the defendant's rights but in fact were favorable to him, otherwise mere surplusage. Hagan v. State, 76 Okl.Cr. 127, 134 P.2d 1042, 1045, wherein the rule is stated:

"The giving of an instruction which is not necessary under the evidence is

not error, when the same in no way prejudiced the rights of the defendant."

The giving of such instruction will not justify a reversal of the case if by giving the same the defendant was not deprived of a substantial right or proper defense. Jones v. State, 77 Okl.Cr. 285, 141 P.2d 109. The loss of such rights or defense does not appear herein, hence no ground for reversible error seems to be involved.

 Thereafter the defendant complains he offered certain requested instructions 1, 2, 3, 4 and 5 on the question of emotional or temporary insanity at the time of the crime, which the trial court refused. We do not find anywhere in the record a request therefor or refusal to give the same or exceptions thereto. In the absence of such request and refusal with noted exceptions in the case-made, we are not at liberty to consider the same. It has been repeatedly held that under the law, we will consider only such matters that appear in the record of the trial below reflected in the case-made. Dowell v. State, Okl.Cr., 245 P.2d 455, and cases cited therein. Furthermore this record does not disclose any objections or exceptions to the instructions given by the trial court. An examination thereof on the question of temporary or emotional insanity shows they covered the defense of not guilty by reason of insanity at the time of the commission of the crime. They were accepted without objection. This contention is therefore without merit.

 The next contention of the defendant is that the evidence raised a presumption of the defendant's insanity at the time of the crime and that the burden then was on the state to prove the defendant's sanity. Lemke v. State, 56 Okl.Cr. 1, 32 P.2d 331; Adair v. State, 6 Okl.Cr. 284, 118 P. 416, 44 L.R.A., N.S., 119. But the presumption of sanity prevails until overcome by sufficient evidence to raise a reasonable doubt of defendant's sanity. Of course when this is done, the burden then devolves on the state to prove the defendant's sanity, and if the jury have a reasonable doubt as to whether the defendant was mentally competent to distinguish between right and wrong and to understand the nature of his acts he must be acquitted. Kennamer v. State, 59 Okl.Cr. 146, 57 P.2d 646; Gallagher v. State, 81 Okl.Cr. 15, 159 P.2d 562. But as hereinbefore indicated the legal test of criminal responsibility under Oklahoma Statutes 1951, T-21, § 152, respecting capacity to commit crime the test of criminal responsibility is fixed at the point where accused has mental capacity to distinguish between right and wrong, as applied to particular act and understand nature and consequence of such act. Gallagher v. State, supra; Owen v. State, 13 Okl.Cr. 195, 163 P. 548; Tittle v. State, 44 Okl.Cr. 287, 280 P. 865. The record discloses no witness either lay or professional testified this defendant was either in such a physical or mental state that he was not able to distinguish between right and wrong. There were some who testified they thought the man was insane but no one sought to bring him within the foregoing rule amounting to legal insanity sufficient to make him unaccountable for his acts. Until legal insanity was established there was not sufficient evidence to create that reasonable doubt required by law to shift the burden of proving defendant's sanity to the state.

The defendant raises other questions which are unsupported by authority and which we do not deem of sufficient moment to discuss.

 This record reveals that the defendant made an unwarranted attack upon the witness Brewer and his former wife. As suggested by the Attorney General it was extremely fortunate both of them were not killed as a result of the affray. This defendant is indeed fortunate for if his aim had been as direct as was his intent he might have been tried for the murder of two people instead of on the charge of assault with intent to kill. The evidence of guilt in this case is clear and complete and while there are errors in the record we do not believe that, in face of the clear evidence of guilt, they constitute sufficient grounds for reversal. If this case were tried again we are of the opinion that the result would be substantially the same as reflected by the verdict of the jury herein. Moreover the sentence of two years, imposed by the trial court herein, under the

circumstances appears to us to be quite lenient. Under the provisions of Title 22, § 1068, O.S.1951, the judgment and sentence is accordingly affirmed.

POWELL, P. J., and JONES, J., concur.

## On Rehearing

BRETT, Judge.

On rehearing it has been called to our attention that on June 9, 1954 there was filed in this court what is designated as an "Amendment to the Case-made", containing a motion and application for leave to submit the defendant's requested and refused instructions 1, 2, 3, 4 and 5 which through some inadvertence were not included in the original case-made and to which reference is made in the opinion of the court handed down on December 22, 1954. In the amendment to the case-made it does not appear that any objection or exception was saved to the court's refusal to give said requested instructions, as provided in Title 22, § 831 and Title 22, § 856, O.S.1951. Thus the record was not properly preserved as a predicate for appeal as to requested instructions. It is apparent no such exceptions were taken since none appear of record in either the original or the amendment to the case-made. The trial court could not now grant an exception to its refusal to give the requested instructions, for after the verdict of the jury the trial court has no power to grant exceptions to instructions. Russell v. State, 17 Okl.Cr. 164, 194 P. 242. The same procedure applicable to given instructions would be applicable to requested instructions, exceptions to the court's refusal to give them must appear of record.

However, we have carefully examined and compared the requested instructions with those which were given and we find that the questions of temporary or emotional insanity and defense of not guilty by reason of insanity as requested in defendant's instructions 1, 2, 3, 4 and 5 were substantially covered in the instructions given by the trial court. No objection and exception was saved to any of the instructions so given. It has been repeatedly held where no objection is taken to the instructions of the trial court, such instructions will not be examined by this court for the purpose of discovering other than fundamental error. Green v. State, 70 Okl.Cr. 228, 105 P.2d 795. We find no fundamental error in the instructions given by the trial court. Under the record thus presented in the original case-made and the amendment to the case-made the situation has thus not been sufficiently changed to warrant any change in the results of the original opinion.

JONES, P. J., and POWELL, J., concur.